**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JACK MANN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case: 1:26-cv-04724** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PERMA-SEAL BASEMENT SYSTEMS, INC.,** | ) | |
| | ) | |
| | ) | **Jury Trial Demanded** |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff, Jack Mann ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Perma-Seal Basement Systems, Inc. ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq. as amended ("ADA") seeking redress for Defendant's disability-based discrimination, disability-based harassment, and Defendant's retaliation against Plaintiff for engaging in a protected activity under the ADA.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

3. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent to jurisdiction have been satisfied.

5. Plaintiff filed a charge of discrimination on the basis of race and disability discrimination, including retaliatory discharge, with the Equal Employment Opportunity Commission ("EEOC") (attached hereto as Exhibit "A").

6. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

7. This Complaint has been filed within ninety (90) days of Plaintiff's receipt of the EEOC's Dismissal and Notice of Right to Sue.

## THE PARTIES

8. Plaintiff, Jack Mann, is a natural person, over 18-years-of-age, who at all times relevant to the allegations of this Complaint resided in Will County, Illinois.

9. Defendant, Perma-Seal Basement Systems, Inc., whose address is 412 Rockwell Ct, Burr Ridge, IL, 60527-5959, is a corporation doing business in and for DuPage County, Illinois.

10. Plaintiff was employed by Defendant as an "employee" within the meaning of 42 U.S.C. §2000e(f) and within the meaning of the Americans with Disabilities Act (ADA), 42 U.S.C. §12111(4).

11. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by Title VII, and has been engaged in an industry

affecting commerce within the meaning of Title VII, 42 U.S.C. § 2000e(b) and as defined by the ADA, 42 U.S.C. §12111(5)(A).

## BACKGROUND FACTS

12. Plaintiff, Jack Mann, was employed by Perma-Seal Basement Systems, Inc. as a Sales Consultant from on or about March 25, 2025, until his unlawful termination on or about March 10, 2026.

13. Plaintiff suffers from a physical impairment that substantially limits one or more major life activities, including his history of severe traumatic brain injury (TBI) resulting from a motorcycle accident in 2003.

14. Plaintiff informed his employer of his disability including HR VP Kristen Radwan, Sales VP Rick Nickel, Sales Managers Pete Garcia and Hank Dreyer, and Culture & Talent Leader Nadia Campos.

15. Despite Plaintiff's disclosure of his disability, Defendant refused to provide him with reasonable accommodations and subjected him to discriminatory treatment based on his disability and history of disability.

16. As part of the hiring process, Plaintiff underwent training to learn about the products and services offered by Defendant, including waterproofing and concrete lifting.

17. Plaintiff's training covered the sales process for these services, and he was expected to use the training to generate sales for Defendant.

18. During the onboarding process, Plaintiff was promised waterproofing leads, which were higher value and offered larger commissions.

19. However, during his employment, Plaintiff was repeatedly assigned to concrete lifting leads, which were lower in value and commission.

20. When Plaintiff requested to be assigned to waterproofing leads, his supervisor, Pete Garcia, responded that Plaintiff's cognitive impairment was the reason he was being kept on concrete leads.

21. Garcia stated, “well, you said yourself, you have issues with your brain or cognitive memory or whatever, so do you really think that’s a good idea?”

22. This comment was directly related to Plaintiff’s disability and illustrated how Plaintiff was being subjected to disparate treatment on the basis of his disability.

23. In response, Plaintiff explained to Garcia that he was capable of selling anything, including waterproofing services, and that he had retained all training regarding waterproofing matters.

24. Despite this, Garcia insisted, “no, I’m pretty sure you’re going to stay in concrete.”

25. In or around March or April 2025, Pete Garcia left the company and Hank Dreyer became Plaintiff’s new sales manager.

26. Dreyer continued the practice of assigning Plaintiff to concrete leads, despite Plaintiff’s repeated requests for waterproofing leads.

27. Hank Dreyer expressed disdain for Plaintiff’s decision not to socialize and drink with him and other colleagues after work.

28. Dreyer frequently asked, “You don’t drink at all? Not even beer?”

29. Plaintiff explained that he had been sober for 31 years due to a past alcohol addiction.

30. However, Dreyer continued to hold this against Plaintiff, despite Plaintiff’s clear explanation.

31. When Plaintiff asked Dreyer for better leads to improve his sales performance, Dreyer verbally agreed to provide better leads but failed to follow through on these promises.

32. This lack of follow-through persisted throughout their working relationship.

33. In or around September 2025, Perma-Seal hired a new sales manager, Rick Nickel.

34. Plaintiff disclosed his disability to Nickel as he had with previous managers, in order to ensure that Nickel was aware of his condition and could provide necessary accommodation.

35. In or around October 2025, Plaintiff raised concerns with Rick Nickel about the refusal to assign him waterproofing leads, believing this to be discriminatory.

36. A week later, Perma-Seal checked a box in Salesforce to direct Leads Manager Bill Jirsa to assign Plaintiff waterproofing leads.

37. However, Bill Jirsa was reluctant to follow through with this directive, likely influenced by past conversations with Pete Garcia and Hank Dreyer.

38. Despite this reluctance, Plaintiff was assigned approximately 4 to 5 waterproofing leads before he had to take medical leave in or around December 2025.

39. The limited number of leads Plaintiff received did not make up for the significant delay in providing Plaintiff with the same opportunities as other sales consultants.

40. Therefore, individuals outside of Plaintiff's protected class were providing better sales opportunities than those within Plaintiff's protected class.

41. On or about December 3, 2025, Plaintiff took medical leave for urological surgery related to lingering issues from his 2003 accident.

42. The surgery was initially expected to require only a few weeks of recovery.

43. Plaintiff's request for medical leave was effectively Plaintiff engaging in protected activity.

44. On or about December 13, 2025, Plaintiff developed blood clots in his right leg, which left him unable to walk.

45. During this time, Plaintiff also suffered from pulmonary embolisms, which further complicated his condition.

46. Plaintiff was hospitalized until January 1, 2026, and required interventional radiology to remove the clots from his inferior vena cava.

47. Throughout this period, Plaintiff kept Nadia Campos and Rick Nickel updated on his condition.

48. Despite the serious nature of Plaintiff's medical situation, he received little understanding or support regarding his recovery needs and accommodation upon his eventual return to work.

49. While Plaintiff was on leave, Rick Nickel left Perma-Seal and began working for a hotel management company.

50. However, after experiencing issues at the hotel, Nickel returned to Perma-Seal as VP of Sales.

51. On or about February 24, 2026, Plaintiff returned to work with no restrictions after his medical leave.

52. Plaintiff was invited into HR VP Kristen Radwan's office, where both Radwan and Sales VP Rick Nickel were present.

53. Nickel asked Plaintiff in a condescending manner, "Are you gonna be able to stay healthy?" To which Plaintiff responded, "Yeah man, I feel great, I'm excited to get back out there."

54. Nickel then informed Plaintiff that he would be placed on "lead management," a position that typically means receiving only 1 to 2 leads per day.

55. By reducing Plaintiff's leads directly after referencing Plaintiff's medical condition and overall health, Defendant effectively was subjecting Plaintiff to a severe and pervasive environment on the basis of his disability and need for accommodation.

56. However, Nickel explained that Plaintiff would receive no new leads at all and would instead focus on revisiting leads that had previously rejected him.

57. Nickel set an unrealistic performance target for Plaintiff, requiring him to generate approximately $308,000 in business within two weeks, which would require increasing his Average Deal Value (ADL) from $981.51 to $2,000.

58. This goal was far beyond reach, given the limited leads Plaintiff was assigned, making it unattainable.

59. The performance goal set for Plaintiff was far beyond what any of the top performers could have achieved, even with more lucrative waterproofing leads.

60. The goal was impossible to meet, particularly given the absence of new leads for Plaintiff to pursue.

61. On or about March 10, 2026, Plaintiff was terminated for failing to meet the unattainable sales goal.

62. The actions taken by Defendant, including the creation of an impossible performance goal and the denial of reasonable accommodations, led directly to Plaintiff's termination.

63. In addition to the failure to provide reasonable accommodations, Defendant discriminated against Plaintiff by denying him access to waterproofing leads, which were more

lucrative, and by placing him in a position where he could not earn commissions comparable to his peers.

64. Plaintiff was subjected to ongoing disability discrimination throughout his employment, including the denial of lucrative leads that would have allowed him to earn commissions comparable to those of his colleagues.

65. Defendant failed to engage in the interactive process required by the ADA, as Plaintiff's request for reasonable accommodation was not properly addressed or acted upon.

66. Plaintiff's request for reasonable accommodation was effectively denied by Defendant, despite clear medical documentation and ability to work with or without restrictions.

67. Throughout Plaintiff's employment, he had not been previously written up for performance issues or any other reason that would warrant termination.

68. Plaintiff suffered multiple adverse employment actions, including but not limited to being unlawfully terminated.

69. The timing of Plaintiff's termination illustrates a causal connection between Plaintiff's termination and engagement in protected activity.

70. As a direct and proximate result of the disability discrimination and retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT I
## Violation of the Americans with Disabilities Act
## (Disability-Based Discrimination)

71. Plaintiff repeats and re-alleges paragraphs 1–70 as if fully stated herein.

72. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

73. Plaintiff met or exceeded performance expectations.

74. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

75. Defendant terminated Plaintiff's employment on the basis of Plaintiff's disability and/or perceived disability, traumatic brain injury (TBI) resulting from a motorcycle accident in 2003.

76. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

77. Plaintiff is a member of a protected class under the ADA due to Plaintiff's disability.

78. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

79. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT II**
**Violation of Americans with Disabilities Act**
**(Failure to Accommodate)**

80. Plaintiff repeats and re-alleges paragraphs 1-70 as if fully stated herein.

81. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*.

82. Plaintiff is a qualified individual with a disability.

83. Defendant failed to engage in the interactive process to determine the appropriate accommodations after Plaintiff requested reasonable accommodations.

84. Plaintiff's reasonable accommodations requested were not an undue burden on the Defendant.

85. Defendant did not accommodate Plaintiff's disability.

86. Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq., due to Plaintiff's disability.

87. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

88. As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

## COUNT III
## Violation of the Americans with Disabilities Act
## (Disability-Based Harassment)

89. Plaintiff repeats and re-alleges paragraphs 1-70 as if fully stated herein.

90. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and harassed the Plaintiff on the basis of Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq.

91. Defendant knew or should have known of the harassment.

92. The disability-based harassment was severe or pervasive.

93. The disability-based harassment was offensive subjectively and objectively.

94. Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq., due to Plaintiff's disability.

95. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

96. As a direct and proximate result of the harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT IV**
**Violation of the Americans with Disabilities Act**
**(Retaliation)**

97. Plaintiff repeats and re-alleges paragraphs 1–70 as if fully stated herein.

98. Plaintiff is a member of a protected class under 42 U.S.C. §12101, et seq.

99. During Plaintiff's employment with Defendant, Plaintiff disclosed that he had a disability, specifically traumatic brain injury (TBI) resulting from a motorcycle accident in 2003, that substantially limits major life activities, and sought accommodations for his condition, including assigning him waterproofing leads.

100. Defendant, Perma-Seal Basement Systems, Inc., was fully aware of Plaintiff's disability and his requests for accommodations. Plaintiff repeatedly disclosed his history of severe traumatic brain injury (TBI) to HR VP Kristen Radwan, Sales VP Rick Nickel, Sales Managers Pete Garcia, Hank Dreyer, and Culture & Talent Leader Nadia Campos.

101. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

102. In response to Plaintiff's disclosure of his disability and request for accommodation, Defendant failed to engage in the interactive process required by the ADA and failed to provide reasonable accommodations for Plaintiff's condition.

103. Defendant then terminated Plaintiff immediately after his request for accommodation and after he Plaintiff returned to work following his medical leave.

104. By virtue of the foregoing, Defendant retaliated against Plaintiff based on his request for accommodation and disclosure of his disability by terminating his employment on or about March 10, 2026, thereby violating the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

105. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

106. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

107. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court find in Plaintiff's favor and against Defendant as follows:

a. Back pay;

b. Payment of interest on all back pay and benefits recoverable;

c. Front pay;

d. Loss of benefits;

e. Compensatory and punitive damages;

f. Reasonable attorneys' fees and costs;

g. Award pre-judgment interest if applicable; and

h. Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated this 27th day of April 2026.

***/s/ Sophia K. Steere***
**SOPHIA K. STEERE, ESQ.**
**SULAIMAN LAW GROUP, LTD.**
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331) 307-7634
Fax (630) 575-8188
ssteere@atlaslawcenter.com
*Attorney for Plaintiff*