**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JACK MANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 26 C 04724 |
| | ) | |
| PERMA-SEAL BASEMENT SYSTEMS, INC., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| | ) | Magistrate Judge Laura K. McNally |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSED MOTION TO DISMISS COUNTS II AND III OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Perma-Seal Basement Systems, Inc. ("Defendant"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully requests the Court to dismiss Counts II and III of Plaintiff's First Amended Complaint for the reasons provided below.

## I. INTRODUCTION

On July 23, 2026, Defendant moved to dismiss Counts II (Failure to Accommodate) and III (Hostile Work Environment) of Plaintiff's Complaint pursuant to Rule 12(b)(6). (Dkt. Nos. 20-21). Plaintiff's response was due on August 20, 2026. (Dkt. No. 20-1). Rather than responding to Defendant's Motion, Plaintiff sought leave to file a First Amended Complaint, which the Court granted. (Dkt. Nos. 25-25.4, 26). Plaintiff subsequently filed his First Amended Complaint on September 1, 2026. (Dkt. No. 29 ("FAC")). Despite the amendment, Plaintiff has done little more than add labels, legal conclusions, and formulaic recitations of the elements of his claims. Stripped of those conclusory allegations, the FAC remains devoid of facts sufficient to state a plausible

claim for failure to accommodate or hostile work environment under the ADA. Accordingly, Counts II and III should be dismissed.

Count II fails because Plaintiff still does not plausibly state a claim that he is a qualified individual with a disability or that Defendant denied a necessary, reasonable accommodation. Although Plaintiff now alleges that his alleged disability affects his memory, causes headaches, and requires medication, he provides no factual allegations explaining how those conditions affected his ability to perform the essential functions of a Sales Consultant. Nor does Plaintiff identify any essential job duty he was unable to perform because of his alleged disability. To the contrary, Plaintiff affirmatively alleges that he had *no work restrictions* and, though conclusory because no facts surrounding his essential job functions have been plead, that his disability did not impact his ability to perform the essential functions of his job. Having alleged that he could perform his job without restriction, Plaintiff fails to identify any accommodation that was necessary to enable him to do so, much less one that Defendant denied. Accordingly, Count II fails to state a failure-to-accommodate claim under the ADA.

Count III similarly fails because Plaintiff does not allege conduct that was sufficiently severe or pervasive to constitute a hostile work environment under the ADA. The First Amended Complaint remains premised on a handful of isolated comments, dissatisfaction with lead assignments, and routine management decisions, none of which amount to actionable disability-based harassment.

Accordingly, because the First Amended Complaint still fails to allege facts sufficient to state a claim for failure to accommodate or hostile work environment under the ADA, Counts II and III should be dismissed with prejudice.

## II. FACTUAL BACKGROUND[1]

Plaintiff alleges that Defendant hired him as a Sales Consultant on March 25, 2025. (FAC ¶ 12). Plaintiff claims that he has a traumatic brain injury ("TBI"). (*Id.* ¶ 14) Plaintiff alleges that his disability affects his memory, causes headaches, and requires him to take medication throughout the day. (*Id.* ¶ 15) According to Plaintiff, this means he is a "qualified individual" under the ADA. (*Id.* ¶ 13, 16) Plaintiff, however, pleads no facts identifying the essential functions of his position or explaining how his alleged disability affected his ability to perform them. (*See generally Id.*)

Plaintiff further alleges that he disclosed his medical condition to Human Resources Vice President Kristen Radwan ("Radwan"), Sales Vice President Rick Nickle ("Nickle") (erroneously named as Rick Nickel), Sales Managers Pete Garcia ("Garcia") and Hank Dryer ("Dryer"), and Culture and16 Talent Leader Nadia Campos ("Campos"). (*Id.* ¶ 18) Although Plaintiff alleges that these individuals failed to offer an accommodation, he does not allege that he requested any specific accommodation, they had knowledge he needed an accommodation or identify what accommodation he needed. (*Id.* ¶ 19) He only alleges that Radwan, Nickle, Garcia, and Dryer failed to offer him any accommodation. (*Id*)

Plaintiff alleges that he completed training on Defendant's concrete lifting and waterproofing services. (*Id.* ¶ 20) Although Plaintiff was able to pass all tests related to obtaining the various leads, including higher value waterproofing leads, he alleges that he requested an additional training and assistance to support his training and understanding, but that Defendant

---

[1] Perma-Seal cites to factual allegations in the First Amended Complaint because it must, but it disputes many of these facts. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

failed to accommodate him. (*Id.* ¶¶ 21- 28) Plaintiff further alleges that Defendant promised waterproofing leads but was instead assigned concrete lifting leads. (*Id.* ¶¶ 29-31)

Plaintiff alleges that he later requested waterproofing leads from his then manger, Garcia, who allegedly told him: "Well, you said yourself, you have issues with your brain or cognitive memory or whatever, so do you really think that's a good idea." (*Id.* ¶¶ 32-34) Plaintiff claims he replied that he could sell anything, but Garcia told him, "No, I'm pretty sure you're going to stay in concrete" and that he had *retained* all training regarding waterproofing matters. (*Id.* ¶¶ 36-37) Garcia allegedly left Defendant in March or April 2025, after which Dryer became his manager. (*Id.* ¶ 39)

Plaintiff alleges that Dryer also continued assigning him concrete leads despite his requests for waterproofing leads to improve his sales performance. (*Id.* ¶¶ 40, 46) Although Dryer allegedly agreed to send him waterproofing leads, Plaintiff claims he did not follow through. (*Id.* ¶ 46) However, Plaintiff attributes Dryer's refusal to send waterproofing leads, to Plaintiff's refusal to socialize or drink with Dryer and other employees after work – not to any purported disability. (*Id.* ¶¶ 42-45).

Plaintiff alleges that Defendant then hired Nickle in September 2025 and that he disclosed his disability to him. (*Id.* ¶¶ 48-49) In October 2025, Plaintiff alleges that he raised concerns with Nickle about the lack of waterproofing leads. (*Id.* ¶ 50) Without any factual support showing that the assignment of waterproofing leads would have enabled him to perform the essential functions of his position, Plaintiff asserts that his request for "more profitable leads" was a request for a reasonable accommodation. (*Id.* ¶ 51). A week later, Defendant allegedly checked a box in Salesforce directing Leads Manager Bill Jirsa ("Jirsa") to assign Plaintiff waterproofing leads. (*Id.* ¶ 52) Plaintiff claims, without supporting facts, that Garcia and Dryer influenced Jirsa not to do

so. (*Id.* ¶ 53) Still, Plaintiff alleges that he received four or five waterproofing leads before taking medical leave in December 3, 2025. (*Id.* ¶¶ 55, 58)

On December 3, 2025, Plaintiff took an approved medical leave of absence for a urological surgery. (*Id.* ¶ 58, 107) He allegedly expected to recover within weeks but developed complications, including blood clots in his right leg on December 13, 2025, and a pulmonary embolism shortly after. (*Id.* ¶¶ 59, 62-63) On January 1, 2026, Plaintiff was hospitalized. (*Id.* ¶ 64) Plaintiff claims he kept Campos and Nickle updated and that Defendant accommodated his medical condition by providing a leave of absence. (*Id.* ¶ 65, 107)

Plaintiff returned to work on February 24, 2026, *without restriction*. (*Id.* ¶ 69) (emphasis added) Upon returning from leave, Radwan and Nickle met with him, and Nickle allegedly asked, "Are you gonna [*sic*] be able to stay healthy?" (*Id.* ¶¶ 70-70) Plaintiff claims he said "Yeah man, I feel great, I'm excited to get back out there." (*Id.* ¶ 71) According to Plaintiff, the comment was inappropriate because his alleged disability did not impact his ability to perform the essential functions of his job. (*Id.* ¶ 72) Plaintiff claims he was then was placed on Lead Management and required him to generate $308,000 in sales within two weeks. (*Id.* ¶¶ 73-76)

On March 10, 2026, Defendant terminated Plaintiff for failing to meet his expected sales goals. (*Id.* ¶ 80) The remainder of the Complaint is comprised of conclusory allegations and legal conclusions.

## III. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the Complaint, not the merits of the allegations. *Gardunio v. Town of Cicero*, 674 F.Supp.2d 976, 983 (N.D. Ill. 2009). To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that is plausible on its face. *Taha v. Int'l Brotherhood of*

*Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court accepts well-pleaded allegations of fact as true and draws all reasonable inferences in the favor of the plaintiff but may disregard legal conclusions. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019).

## IV. ARGUMENT

### A. Count II Must Be Dismissed Because Plaintiff Does Not Plead Facts To State A Failure to Accommodate Claim

Plaintiff's failure-to-accommodate claim must be dismissed because he does not plead facts that he is a qualified individual with a disability, nor does he allege any facts showing that he requested or needed a reasonable accommodation. To state a failure-to-accommodate claim under the ADA, a plaintiff must plead that (1) they are a qualified individual with a disability, (2) the employer was aware of the disability, and (3) their employer failed to reasonably accommodate the disability. *Torzewski v. COSCO Shipping Lines N. Am. Inc.*, 414 F. Supp. 3d 1143, 1149 (N.D. Ill. 2019). Because Plaintiff's allegations fall short of the minimal pleading standard, Count II of his Complaint must be dismissed.

#### 1. *Plaintiff Did Not Plead Facts That He Is Qualified Individual With A Disability*

At the pleading stage, a plaintiff asserting a failure-to-accommodate claim must allege facts showing both that: (1) he has a disability that substantially limits a major life activity, and (2) he is a qualified individual who can perform the essential functions of his position, with or without a reasonable accommodation. *Blink v. Union Pac. R.R. Co.,* Case No. 25 C 07521, 2026 U.S. Dist.

LEXIS 29270, at *11 (N.D. Ill. Feb. 12, 2026); *Mack v. Chicago Transit Authority*, Case No. 17 C 6908, 2020 U.S. Dist. LEXIS 108608, at *7 (N.D. Ill. June 22, 2020). Failure to plead either is fatal to the claim. *Id*.

Plaintiff's First Amended Complaint has done nothing more than add additional threadbare recitals of the elements of a qualified individual with a disability. Specifically, Plaintiff has retained all of his original allegations and merely added three conclusory assertions: (1) that "Plaintiff's disability impacts major life activities such as his ability to remember, experience headaches, and requires him to take medication" (FAC ¶ 15); (2) that Plaintiff is a "qualified individual" under the ADA (*Id*. at ¶ 17); and (3) that "[r]egardless of Plaintiff's disability, Plaintiff was qualified to perform the essential functions of his role, with or without accommodations (*Id*. at ¶ 17)." These allegations amount to nothing more than a formulaic recitation of the elements of an ADA claim and do not plausibly establish that Plaintiff is a qualified individual with a disability. *See Iqbal*, 556 U.S. at 678 (concluding a complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Twombly*, 550 U.S. at 557 (alteration in original)); *Scales v. UPS*, Case No. 25 C 15292, 2026 U.S. Dist. LEXIS 170740, at *6 (N.D. Ill. July 31, 2026) (stating "though the allegation that the Plaintiff was limited in 'lifting and carrying' is slightly more specific, it remains a conclusory statement that provides little explanation or factual context as to the effect the disability has had on Plaintiff's major life activities").

Plaintiff's allegation that he has difficulty remembering, experiences headaches, and takes medication fare no better. They remain entirely conclusory and provide no factual context how his alleged disability affects any major life activity or his ability to perform the essential functions of a Sales Consultant. *Scales*, 2026 U.S. Dist. LEXIS 170740, at *6. Indeed, Plaintiff fails to plead what his job duties were, which duties he could perform, or which duties he could not perform

because of his alleged medical condition. *See Mack*, 2020 U.S. Dist. LEXIS 108608 at *8 (dismissing a failure-to-accommodate claim where the plaintiff failed to allege facts regarding her ability to perform the essential functions of her position); *see also Lee v. Chicago Transit Authority*, Case No. 12 C 09180, 2016 U.S. Dist. LEXIS 156967, at *12 (N.D. Ill. Nov. 14, 2016) (dismissing a failure-to-accommodate claim where the plaintiff failed to allege his job duties, which duties he could perform, or which duties he could not perform due to his medical condition).

Plaintiff's own allegations further undermine his disability claim. Plaintiff concedes that he has *no work restrictions*, negating any plausible inference that he has a disability or required an accommodation. (FAC, ¶¶ 69, 72); *see also Blink*, 2026 U.S. Dist. LEXIS 29270, at *12 (dismissing a failure-to-accommodate claim, in part, because the plaintiff's admission that his physician released him to return to work without restrictions, and that his condition was controlled, undermined his claim that he was a qualified individual with a disability under the ADA). Plaintiff further undercuts his allegations by expressly pleading that Rick Nickle allegedly made an inappropriate comment "*despite Plaintiff's disability not impacting his ability to perform the essential functions of his job*." (FAC ¶ 72) By Plaintiff's own admission, his alleged disability did not affect his ability to perform the essential functions of his position, such that he required accommodation. (*Id.*)

Because the First Amended Complaint continues to rely on conclusory assertions and formulaic recitations rather than factual allegations plausibly establishing that Plaintiff is a qualified individual with a disability, Count II should be dismissed.

#### ***2. Plaintiff Does Not Identify Any Specific Accommodation Needed or Allege that He Requested An Accommodation***

Even if Plaintiff adequately pled that he is a qualified individual with a disability, his failure to accommodate claim also fails because he does not allege any facts that he needed

accommodation that would have allowed him to perform the essential functions of his job. To survive dismissal, a plaintiff asserting a failure-to-accommodate claim must, at a minimum, identify the accommodation sought and allege how that accommodation would have enabled him to perform his job. *Knighten v. Ill. Dep't of Hum. Servs.*, No. 25 C 9867, 2026 U.S. Dist. LEXIS 97670 at * 6-7 (N.D. Ill. May 4, 2026); *Butler v. E. Lake Mgmt. Grp.*, Case No. 10 C 6652, 2013 U.S. Dist. LEXIS 68726, at *6 (N.D. Ill. May 15, 2013) (citing *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996)).

Although Plaintiff attempts to cure the deficiency in his failure-to-accommodate claim by identifying purported accommodation requests, the First Amended Complaint remains devoid of factual allegations identifying a necessary accommodation or explaining how any proposed accommodation would have enabled him to perform the essential functions of his position.

First, Plaintiff attempts to characterize a request for additional training as a request for an accommodation. (FAC ¶¶ 21-22) Yet, Plaintiff alleges no facts, beyond conclusory assertions regarding memory issues, showing that the requested training was necessary to enable him to perform the essential functions of his position. Indeed, Plaintiff's own allegations refute that contention. Plaintiff admits that he successfully completed his training and passed the examinations necessary to allegedly obtain various leads without the additional training. (*Id.* ¶ 28) Plaintiff further alleges that he "*retained all training regarding waterproofing training*." (*Id.* ¶ 36); *See also* (*Id.* ¶ 72) ("*….despite Plaintiff's disability not impacting his ability to perform the essential functions of his job*"). These allegations foreclose any plausible inference that additional training was a necessary accommodation because they establish that Plaintiff could perform the essential functions of his position without it. *See Brumfield v. City of Chi.*, 735 F.3d 619, 632 (7th Cir. 2013) ("It follows that an employer need not accommodate a disability that is irrelevant to an

employee's ability to perform the essential functions of her job—not because such an accommodation might be unreasonable, but because the employee is fully qualified for the job without accommodation and therefore is not entitled to an accommodation in the first place.").

Plaintiff also attempts to recast his requests for waterproofing leads as requests for a reasonable accommodation. (FAC ¶ 51) But Plaintiff alleges that he sought waterproofing leads to increase his sales opportunities, not to accommodate any alleged disability. (*Id.* ¶ 46) ("…*Plaintiff asked Dryer for better lead to improve his sales performance*"). Nor does Plaintiff allege how receiving different sales leads would have enabled him to perform the essential functions of his position. *See generally,* (*Id.*) At most, these allegations reflect a preference for different and more lucrative assignments, which is not a reasonable accommodation under the ADA. *See* (*Id.* ¶¶ 28-29, 31, 51, 83); *see also Weiler v. Household Fin. Corp.*, 101 F.3d 519, 526 (7th Cir. 1996) (stating that the ADA's reasonable-accommodation requirement does not allow employees to establish their own preferred conditions of employment).

Plaintiff's medical-leave theory fares no better. Plaintiff alleges that he requested a medical leave of absence and that Defendant granted that request. (FAC ¶¶ 60-61, 69, 107). Having conceded that he received the accommodation he requested, Plaintiff cannot plausibly allege that the same conduct constituted a failure to accommodate. Nor does he reconcile that allegation with his admission that he returned to work without restrictions. (*Id.* ¶ 69)

Because Plaintiff fails to allege facts showing that he requested a specific accommodation or facts on how any such accommodation would have enabled him to perform the essential functions of his position, his failure-to-accommodate claim should be dismissed.

### B. Count III of Plaintiff's Complaint Must Be Dismissed Because Plaintiff Does Not State a Claim for Disability Harassment

Plaintiff does not state a claim for disability harassment. The pleading standard for harassment under the ADA is the same as a Title VII claim. *De Lion v. CRRC Sifang Am., Inc.,* Case No. 22 C 00070, 2023 U.S. Dist. LEXIS 133025, at *14 (N.D. Ill. Aug. 1, 2023) (citing *Demkovich v. St. Andrew the Apostle Parish, Calumet City*, 3 F.4th 968, 977 (7th Cir. 2021)). A plaintiff seeking to raise a hostile work environment claim must show they were (1) subject to unwelcome harassment, (2) that the harassment was based on a disability, (3) that the harassment was severe or pervasive and created a 'hostile or abusive situation,' and (4) that there is a basis for employer liability. *De Lion*, 2023 U.S. Dist. LEXIS 133025, at *14; *Dodgen v. AARP,* Case No. 21 C 00086, 2022 U.S. Dist. LEXIS 178814, at *9 (N.D. Ill. Sep. 30, 2022).

To survive a motion to dismiss, a plaintiff asserting a hostile work environment claim must plausibly allege that the work environment was *objectively* offensive. *Jing Zhang v. Bank of China Chi. Branch,* No. 23 C 3510, 2024 U.S. Dist. LEXIS 20470, at *12 (N.D. Ill. Feb. 6, 2024). A plaintiff must plead factual allegations that plausibly suggest the work environment was sufficiently severe or pervasive such that it altered the conditions of employment and created an abusive working environment. *De Lion*, 2023 U.S. Dist. LEXIS 133025, at *14. At the pleading stage, courts consider whether Plaintiff alleged that the totality of the circumstances, including the frequency and severity of the alleged discriminatory conduct, was physically threatening or humiliating as opposed to a mere offensive utterance, and whether it unreasonably interfered with the employee's work performance. (*Id.*) Neither a single remark nor dissatisfaction with disciplinary actions taken by management create a hostile work environment. *Butler v. Fed. Whalen Moving & Storage LLC*, 1 Fed. App'x. 505, 507 (7th Cir. 2001); *De Lion*, 2023 U.S. Dist. LEXIS 133025, at *14.

Although Plaintiff now asserts that Defendant's denial of waterproofing leads constituted conduct that was sufficiently severe or pervasive to create a hostile work environment, that assertion is yet another conclusory recitation of a required element. (FAC, ¶¶ 33, 38, 41, 56, 116). The First Amended Complaint continues to lack factual allegations demonstrating the type of disability-based harassment necessary to sustain a hostile work environment claim. Stripped of its newly added labels and legal conclusions, Plaintiff's claim still rests on four allegations: (1) Garcia allegedly responded to Plaintiff's request for waterproofing leads by stating, "you have issues with your brain or cognitive memory or whatever, so do you really think that's a good idea" (*Id*. at ¶¶34, 38); (2) Dreyer allegedly expressed disapproval of Plaintiff's decision not to socialize or consume alcohol with coworkers (*Id*. at ¶¶ 43-47); (3) Nickle allegedly asked Plaintiff upon his return to work, "[a]re you gonna [sic] be able to stay healthy" (*Id.* ¶¶ 71-72); and (4) Plaintiff was placed on a Lead Management Plan and denied access to waterproofing leads (*Id*. at ¶¶ 73-74). Even accepting these allegations as true, they do not state a hostile work environment claim.

As a threshold matter, Plaintiff's allegations about Dreyer fail because they are not tied to disability. Plaintiff pleads that Dreyer's alleged conduct arose from Plaintiff's refusal to drink or socialize with coworkers, not from any alleged disability. (FAC ¶¶ 43-45)*; see De Lion*, 2023 U.S. Dist. LEXIS 133025, at *15. (holding that a plaintiff "must allege some facts sufficient to show a plausible link between a disability and the workplace hostility alleged"). Accordingly, Plaintiff cannot plausibly assert any harassment claim based on Dreyer's alleged conduct.

Nor does Plaintiff cure the deficiencies regarding Garcia's alleged comment. At most, Plaintiff alleges that Garcia made a single remark concerning Plaintiff's purported cognitive condition in connection with Plaintiff's request for waterproofing leads (again, the type of sales that Plaintiff preferred). Even assuming the comment relates to Plaintiff's alleged disability, an

isolated remark is insufficient to establish severe or pervasive harassment. *See Butler*, 1 F. App'x 505 at 507 (holding that a single remark and dissatisfaction with management decisions do not create a hostile work environment).

Plaintiff's reliance on the Lead Management Plan (which is similar to a performance improvement plan) and now the alleged denial of waterproofing leads fares no better. Courts have repeatedly recognized that routine management decisions, performance-related monitoring, workplace discipline, heightened scrutiny, and dissatisfaction with work assignments do not constitute actionable harassment. *See Duniya v. Power*, Case No. 21 C 3399, 2023 U.S. Dist. LEXIS 58045, at 10 (N.D. Ill. Apr. 3, 2023*); see also De Lion*, 2023 U.S. Dist. LEXIS 133025, at 17-18; *see also Dodgen v. AARP*, Case No. 21 C 00086, 2022 U.S. Dist. LEXIS 178814, at *11 (N.D. Ill. Sept. 30, 2022). Plaintiff's allegations that he was placed on a Lead Management Plan and denied preferred lead assignments fall squarely within the type of ordinary workplace actions that courts routinely hold are insufficient to support a hostile work environment claim.

The same is true of the isolated comments allegedly made by Garcia and Nickle. Taken together, Plaintiff identifies only two remarks over the course of his employment. Even if accepted as offensive, sporadic comments of this kind do not create an objectively hostile or abusive work environment. See *Jackson v. New Choice Intervention, Inc.*, Case No. 24 C 08517, 2026 U.S. Dist. LEXIS 86066, at 13 (N.D. Ill. Apr. 20, 2026). Indeed, in *Jackson*, the plaintiff asserted an ADA hostile work environment claim based on several comments by her manager, including: "[I]t seems like you need someone to take care of you instead of you taking care of our clients. I'm not sure what to do," "[Other employees with medical problems] do not grumble and misinterpret empathetic counsel," and "I do not know what to do or how to help you." (*Id.*) This Court held that even viewing those allegations in the light most favorable to the plaintiff, the comments were not

objectively offensive and were not sufficiently severe or pervasive to create a hostile work environment. (*Id.*) The allegations here are even less substantial than those in *Jackson*. None of the alleged comments were threatening, physically intimidating, humiliating, or alleged to have interfered with his job performance. Indeed, even assuming Nickle made the alleged statement regarding Plaintiff's ability to remain healthy, the comment is not objectively offensive. Like *Jackson*, Plaintiff's allegations fall well short of plausibly establishing a hostile work environment under the ADA.

Finally, Plaintiff's Complaint is devoid of any facts that would allow this Court to make a reasonable inference that there is a basis for employer liability. *See Ford*, 942 F.3d at 856 ("[E]mployers are strictly liable for harassment committed by supervisors, but liable for harassment by co-workers only if the employer was 'negligent either in discovering or remedying the harassment.'") (internal citation omitted).

Accordingly, Count III should be dismissed because Plaintiff still does not state a claim for disability-based harassment.

## V. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss Counts II and III of the First Amended Complaint with prejudice.

Dated: September 15, 2026

Respectfully submitted,

PERMA-SEAL BASEMENT SYSTEMS, INC.

By: /s/ Eduardo Roa
One of Its Attorneys

Antonio Caldarone (6285859)
Eduardo Roa (6347791)
Laner Muchin, Ltd.
515 North State Street, Suite 2400
Chicago, Illinois 60654
(312) 467-9800
(312) 467-9479 (fax)
acaldarone@lanerlaw.com
eroa@lanerlaw.com

## CERTIFICATE OF SERVICE

I, Eduardo Roa, the undersigned attorney, hereby certify that on September 15, 2026, I electronically filed the foregoing **Defendant's Memorandum In Support of Its Opposed Motion to Dismiss Counts II and III of Plaintiff's First Amended Complaint** using the CM/ECF system, and therefore served the same on the parties of record in this case, who may access this filing through the CM/ECF system.

Sophia K. Steere
Nathan Volheim
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
ssteere@atlaslawcenter.com
nvolheim@sulaimanlaw.com

/s/Eduardo Roa