**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JACK MANN,** | ) | |
| **Plaintiff,** | ) | **Case: 1:26-cv-04724** |
| **v.** | ) | |
| **PERMA-SEAL BASEMENT SYSTEMS, INC.,** | ) | **Jury Trial Demanded** |
| **Defendant.** | ) | |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS COUNTS II AND III OF PLAINITFF'S FIRST AMENDED COMPLAINT**

---

**NOW COMES** Plaintiff, Jack Mann ("Plaintiff"), by and through the undersigned counsel, hereby submits this Memorandum in Opposition to Defendant's Motion to Dismiss Counts II and III of Plaintiff's First Amended Complaint and in support states as follows:

## I. INTRODUCTION

On September 1, 2026, Plaintiff filed his First Amended Complaint (herein after "FAC") with this Court against Defendant [Dkt. 29]. Plaintiff's claims arise from his employment with Defendant where Plaintiff was discriminated against, subject to a hostile work environment, failed to be accommodated, and retaliated against in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq*. as amended ("ADA").

On September 16, 2026, Defendant filed a Partial Motion to Dismiss Plaintiff's First Amended Complaint (hereinafter "Defendant's MTD"). [Dkt. 32]. Defendant's MTD asserts Plaintiff's claims for failure to accommodate (Count II) and disability-based harassment (Count III) must be dismissed. For the reasons explained below, Defendant's arguments are without merit,

and its Motion should be denied in its entirety.

## II. RELEVANT ALLEGATIONS

Plaintiff worked for Perma-Seal as a Sales Consultant from approximately March 25, 2025, until his termination on or about March 10, 2026. (FAC ¶ 12). Plaintiff has a history of severe Traumatic Brain Injury ("TBI") stemming from a 2003 motorcycle accident which continues to impact major life activities, including impacting his ability to recall information, causing headaches, and requiring medication multiple times a day. (FAC ¶ 14- 15). Plaintiff informed Defendant's leadership of his disability, including Vice President of Human Resources Kristen Radwan, Vice President of Sales Rick Nickel, Sales Managers Pete Garcia and Hank Dreyer, and Culture & Talent Leader Nadia Campos. (FAC ¶ 18).

As a Sales Consultant, Plaintiff was trained on Defendant's waterproofing and concrete lifting products and was expected to use that training to generate sales. (FAC ¶¶ 20, 27). During training, Plaintiff explained to his trainer that his TBI causes mental impairments and requested a reasonable accommodation in the form of additional training and assistance to support his training and understanding. (FAC ¶ 21-22). Defendant did not provide the requested accommodation and did not engage in any interactive process. (FAC ¶¶ 22–26). Despite the lack of accommodation, Plaintiff passed all tests required to obtain leads, including the higher-value waterproofing leads. (FAC ¶ 28).

Instead of providing Plaintiff with waterproofing leads, Defendant repeatedly assigned him lower-value concrete lifting leads. (FAC ¶ 29-30). Rather than accommodating Plaintiff with additional information and support, Defendant minimized his sales opportunity and refused to provide him with the same opportunities as similarly situated individuals. (FAC ¶ 31-32, 40-41, 48-51, 57, 84, 104). Sales Manager Garcia expressly identified Plaintiff's cognitive impairment as

the reason he was kept on concrete leads, telling him: "well, you said yourself, you have issues with your brain or cognitive memory or whatever, so do you really think that's a good idea?" (FAC ¶¶ 32, 34). When Plaintiff responded that he could sell anything and had retained all of his waterproofing training, Garcia replied: "no, I'm pretty sure you're going to stay in concrete" directly indicating that Defendant was basing their decision to refuse Plaintiff the more profitable leads based upon his disability. (FAC ¶¶ 36–37). When Dreyer became Plaintiff's manager after Garcia's departure, Dreyer continued the concrete-only practice despite Plaintiff's repeated requests to receive waterproofing leads, which continued to subject Plaintiff to a discriminatory and hostile work environment. (FAC ¶ 39-40). Dreyer repeatedly promised Plaintiff better leads but never followed through, and the exclusion persisted demonstrating that Defendant would not accommodate his disability, and would instead subject him to decreased income and adverse action. (FAC ¶¶ 46–47).

In or around September 2025, Defendant hired Nickel as Vice President of Sales, and Plaintiff disclosed his disability to Nickel so that Nickel could provide a necessary accommodation. (FAC ¶¶ 48–49). In or around October 2025, Plaintiff complained to Nickel that the refusal to assign him waterproofing leads was discriminatory. (FAC ¶ 50). Plaintiff's requests for these leads were requests to be afforded the same opportunities as his peers despite his disability. (FAC ¶ 51). Meanwhile, peers outside Plaintiff's protected class received better opportunities, and managers repeatedly allowed the hostile disparate treatment to continue despite Plaintiff's repeated requests. (FAC ¶¶ 55–57).

On December 3, 2025, Plaintiff requested and took medical leave for urological surgery related to lingering issues from his 2003 accident, a request that itself was a request for accommodation. (FAC ¶¶ 58, 60–61). He then developed blood clots on December 13, 2025, was unable to walk,

suffered pulmonary embolisms, and was hospitalized until January 1, 2026, requiring interventional radiology. (FAC ¶¶ 62–64). Plaintiff kept Campos and Nickel updated, but received little understanding or support regarding his recovery needs and accommodation upon return. (FAC ¶¶ 65–66). Plaintiff returned to work on February 24, 2026, with no restrictions. (FAC ¶ 69). In Radwan's office, with Nickel present, Nickel asked Plaintiff in a condescending manner, "Are you gonna be able to stay healthy?" a direct reference to his disability and the related complications. (FAC ¶¶ 70–72). Plaintiff was immediately placed on "lead management," which typically means he receives only one to two leads per day. (FAC ¶¶ 73–74). He was then told he would receive no new leads at all and must revisit leads that had previously rejected him even though Defendant set him a target of approximately $308,000 in two weeks, which required increasing his Average Deal Value from $981.51 to $2,000, a goal that was impossible and beyond what even top performers could achieve. (FAC ¶¶ 75–79). On or about March 10, 2026, Defendant terminated Plaintiff for failing to meet the unachievable goal that Defendant imposed shortly after his return from medical leave. (FAC ¶ 73-80). Plaintiff had never been written up and had met or exceeded expectations before this clearly adverse action. (FAC ¶¶ 87, 93.)

## III. LEGAL STANDARDS

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). If it only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," the complaint fails to satisfy the pleading requirements and dismissal is appropriate. *Id., quoting Twombly*, 550 U.S. at 555.

The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts

upon which he bases his claim. Instead, all that is required is that the claimant set forth a 'short and plain statement of the claim' sufficient to give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests'. *Iqbal*, 556 U.S. at 677. A court should only grant a motion to dismiss for failure to state a claim "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Conley v. Gibson*, 335 U.S. 41, 45-46,. 2 L.Ed.2d 80 (1957); see also Fed. R. Civ. P. 12(b)(6). The Seventh Circuit applies this standard, and has emphasized that allegations are viewed liberally under federal notice pleading and that little is required to state a claim. *McDorman v. Smith*, No. 05 C 0448, at *9 (N.D. Ill. Aug. 11, 2006). To meet the pleading requirements, a Plaintiff is required to allege "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting Plaintiff's claim." See, e.g., *Richardson v. Swift Transportation Co. of Arizona, LLC*, Case No. 17-c-4046, 2018 WL 1811332, N.D. Ill. Apr. 17, 2018 (quoting *Huri v. Office of the Chief Judge of the Circuit Ct. of Cook Cty*., 804 F.3d 826, 833 (7th Cir. 2015)). When evaluating a motion to dismiss under Rule 12(b)(6), a court must accept as true all the well-pleaded material facts and must draw all reasonable inferences from those facts in the light most favorable to the pleader. *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir. 1991).

## IV. <u>ARGUMENT</u>

### A. DEFENDANT'S MOTION TO DISMISS COUNT II SHOULD BE DENIED BECAUSE PLAINTIFF HAS SUFFICIENTLY PLED A CLAIM FOR FAILURE TO ACCOMMODATE.

In order for Plaintiff "to establish a prima facie case of failure to accommodate in accordance with the Americans with Disabilities Act, a plaintiff must show that: (1) he or she is a qualified individual with a disability; (2) the employer was aware of his or her disability; and (3) the employer failed to reasonably accommodate the disability." *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 746 (7th Cir. 2011). Under the ADA, a "*qualified individual*" is one who, with or without

reasonable accommodation, can perform the essential functions of the employment position. 42 U.S.C.S. § 12111. A reasonable accommodation may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position ..., and other similar accommodation for individuals with disabilities." *Schwab v. N. Ill. Med. Ctr.*, 42 F. Supp. 3d 870, 883-84 (N.D. Ill. 2014) (where the plaintiff requesting one month off for medical appointments was considered a reasonable accommodation); *Hammel v. Eau Galle Cheese Factory*, 2003 U.S. Dist. LEXIS 7515, *30 (2003) (where the Plaintiff requesting for someone to monitor his performance was a request for accommodation).

Plaintiff has plausibly alleged each element necessary to state a claim for failure to accommodate under the ADA. First, Plaintiff specifically alleges that he was a qualified employee who could perform the essential functions of his job, with or without accommodation. (FAC ¶¶ 16-17, 102]. Defendant argues that Plaintiff fails to allege that he is a qualified individual and offers only "threadbare recitals." That argument ignores the specific details Plaintiff gives about his disability including the origin of his disability, its impact on major life activities, and his ability to successfully perform his role. Under the ADA, "[t]he term "disability" means, with respect to an individual— (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Plaintiff has sufficiently pled this standard to be defined as disabled. 42 U.S. Code § 12102

Plaintiff identifies the origin of his traumatic brain injury (TBI): a motorcycle accident in 2003. (FAC ¶¶ 14, 95). Plaintiff also states how the TBI affects his major life activities. It impairs his ability to remember, causes headaches, and requires him to take medication multiple times a day. (FAC ¶¶ 13-16, 95). Plaintiff further alleges that his TBI causes mental impairments that led

him to request additional training and assistance during onboarding. (FAC ¶ 21). Memory function, learning, and thinking are quintessential major life activities, and brain and neurological function are expressly enumerated major bodily functions. 42 U.S.C. § 12102(2). Therefore, Plaintiff has sufficiently alleged a mental impairment that limit his major life functions under the ADA.

Plaintiff also provides, in detail, that Plaintiff could, and did, perform the essential functions of his position. Plaintiff worked for Defendant as a Sales Consultant from approximately March 25, 2025, until his unlawful termination on or about March 10, 2026. (FAC ¶ 12). As part of the hiring process, he completed Defendant's training on its products and services, including waterproofing and concrete lifting, and on the sales process for those services. (FAC ¶¶ 20, 27). Even though Defendant denied his request for additional training support, Plaintiff passed every test Defendant required to obtain the various leads, including the higher value waterproofing leads. (FAC ¶¶ 24, 28). When his supervisor pointed to Plaintiff's "issues with his brain or cognitive memory" as the reason to keep him on concrete leads, Plaintiff responded that he could sell anything, including waterproofing services, and that he had retained all of his waterproofing training. (FAC ¶¶ 32, 34, 36). Therefore, Plaintiff could perform the essential functions of his job regardless of his disability. Plaintiff repeatedly asked Defendant to stop minimizing his capabilities because of his disability and to assign him the higher value waterproofing leads. (FAC ¶¶ 32-37, 40, 50-51, 104-105, 117). When Defendant finally directed that he receive waterproofing leads, Plaintiff worked approximately four to five of them before taking medical leave. (FAC ¶¶ 52, 54). Plaintiff also alleges that he met or exceeded Defendant's performance expectations. (FAC ¶¶ 87, 93). He was never written up for performance issues or for any other reason that would warrant termination. (FAC ¶ 87). He could work with or without restrictions. (FAC ¶ 86). Thus, Plaintiff has plausibly pled that he was a qualified individual with a disability.

Next, Defendant does not challenge the second element of the failure to accommodate claim. Plaintiff sufficiently pled that he provided notice to Defendant on more than one occasion through repeated reports to management, requests for accommodation, and Defendant's management team making comments about his disability. (FAC ¶¶ 13-19, 21-22, 32, 34-36, 49-51, 102). Specifically, Garcia stated, "well, you said yourself, you have issues with your brain or cognitive memory or whatever, so do you relay think that's a good idea?" (FAC ¶ 34). This statement is a specific allegation demonstrating that Defendant knew of and regarded  as disabled.

Defendant's final argument is Plaintiff failed to allege any specific accommodation. This is untrue. Plaintiff alleged that Defendant failed to accommodate his disability despite knowing of his disability and his multiple requests. Within his Amended Complaint, Plaintiff directly alleges two instances of him requesting reasonable accommodation. First, Plaintiff requested an accommodation by asking for assistance in training as his TBI causes mental impairments. (FAC ¶ 21). Although Defendant failed to provide any additional training or assistance, he was still able to perform the essential functions of his job. (FAC ¶¶ 17, 24-28). Second, Plaintiff requested accommodation in the form of medical leave for surgery related to lingering issues from his 2003 accident. (FAC ¶¶ 58, 60-61, 106). When he returned on February 24, 2026, with no restrictions, Defendant offered little understanding or support for his recovery needs, despite being fully advised of his condition and potential need for accommodation. (FAC ¶¶ 66, 69). Instead, Nickel asked whether Plaintiff was "gonna be able to stay healthy," cut off his new leads entirely again denying his accommodation, and set a performance target of approximately $308,000 in two weeks that no employee could have met. (FAC ¶¶ 71, 73, 75-79). Defendant terminated Plaintiff for failing to meet that impossible goal less than three weeks after his return, which undermined, and in effect rejected, any initial approval of his leave or accommodation. (FAC ¶¶ 80-82, 107, 109).

Plaintiff further alleges that none of the accommodations he requested would have imposed an undue burden on Defendant, and that Defendant never engaged in the interactive process the ADA requires. (FAC ¶¶ 85, 103, 108]. Taken as true, these allegations plausibly establish that Defendant knew of Plaintiff's disability, received his requests for reasonable accommodation, and failed to accommodate him.

These allegations establish not only that Defendant was on notice of Plaintiff's disability, but also that Plaintiff engaged in protected activity by seeking accommodation, and that Defendant terminated Plaintiff instead of accommodating him. At a minimum, Plaintiff has plausibly alleged facts supporting a failure to accommodate claim for which relief may be granted. Plaintiff provides specific managers names, statements made by Defendant's management, dates, and accommodation needed completely undermining Defendant's characterization of the FAC as "conclusory". These are not bare recitals of elements; they are concrete factual allegations that provide Defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Iqbal*, 556 U.S. 662, 677 (2009). At this stage, the Court must accept Plaintiff's well-pleaded allegations as true and draw all reasonable inferences in his favor.

Accordingly, Plaintiff's failure-to-accommodate claim is sufficiently pled and should proceed beyond the pleading stage. Plaintiff therefore requests that this Court deny Defendant's motion to dismiss Plaintiff's failure to accommodate claim.

**B. DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF HAS SUFFICIENTLY PLED DISABILITY-BASED HARASSMENT**

In order to state a claim for disability-based hostile work environment, a plaintiff must allege that "(1) they were subject to unwelcome harassment; (2) the harassment was based on their [disability]; (3) the harassment was so severe or pervasive as to alter the conditions of employment

and create a hostile or abusive working environment; and (4) there is a basis for employer liability." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018). The third element requires that the conduct must be *either* severe *or* pervasive." *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011), *aff'd*, 133 S. Ct. 2434 (2013) (emphasis in original). This can be satisfied in many ways and does not necessarily require multiple, harassing events, "one extremely serious act of harassment could rise to an actionable level as could a series of less severe acts." *Hall v. City of Chicago*, 713 F.3d 325, 330 (7th Cir. 2013) (quoting *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001)). A court addressing this element must consider "factors like the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Coffey-Sears v. Lyons Township High Sch. Dist. 204*, 15-CV-08642, 2017 WL 1208439, at *12 (N.D. Ill. Mar. 31, 2017). This is determined from both a subjective and objective point of view. *EEOC v. Costco Wholesale Corp.*, 903 F.3d 618, 625 (7th Cir. 2018).

Here, Defendant again asserts that Plaintiff's FAC is conclusory, merely recites the elements of a hostile work environment claim, that his allegations do not rise to the level of severe and pervasive, and that the facts do not suggest that the harassment was based on his disability. (Def.'s Mem. at IV (B)). However, Plaintiff need not prove a claim of harassment at this stage. Instead, Plaintiff must have pled a "short and plain statement of the claim." *Iqbal*, 556 U.S. at 677. By questioning the sufficiency of the facts and what they demonstrate, Defendant is making arguments that are factual in nature. Doing so in this stage of the proceedings is improper, as it is a well-established rule that when defenses are factual in nature, rather than legal, such defenses are not available to Defendants on a motion to dismiss, but should be set forth in their answer.

*Browder v. Hanley Dawson Cadillac Co.*, 62 Ill. App. 3d 623, 20 Ill. Dec. 138, 379 N.E.2d 1206, 1978 Ill. App. LEXIS 2994 (Ill. App. Ct. 1st Dist. 1978). Beyond the answer stage, factual arguments are better suited for summary judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2017). Contrary to Defendant's assertions, Plaintiff has pled a short and plain statement of the claims, thereby satisfying all requirements at this stage in the litigation, as the complaint sufficiently describes the harassing treatment he endured, and then elaborates beyond mere conclusory allegations by explaining how this treatment impacted his employment.

First, Plaintiff alleges that he was subjected to unwelcome harassment. (FAC ¶¶ 33, 38, 57, 115-120). When Plaintiff asked to be assigned the higher value waterproofing leads he had been promised and had qualified for, his supervisor, Pete Garcia, told him, "well, you said yourself, you have issues with your brain or cognitive memory or whatever, so do you really think that's a good idea?" (FAC ¶¶ 28-29, 32, 34). This comment was directly related to Plaintiff's disability and minimized Plaintiff's capability, which is in itself particularly severe. In response, Plaintiff pushed back and explained that he could sell anything, including waterproofing services, and that he had retained all of his waterproofing training. (FAC ¶ 36). Garcia nonetheless insisted, "no, I'm pretty sure you're going to stay in concrete", solidifying that the terms and conditions of Plaintiff's employment would be altered because of his disability. (FAC ¶¶ 36-37). Garcia's successor, Hank Dreyer, continued to keep Plaintiff on concrete leads despite his repeated requests. Dreyer also repeatedly promised better leads and never followed through. (FAC ¶¶ 40, 46-47). Plaintiff then complained to Rick Nickel that the refusal to assign him waterproofing leads was discriminatory, further establishing that Plaintiff believed that Defendant's acts were subjectively severe. (FAC ¶ 50, 116, 118-119). When Plaintiff returned from medical leave with no restrictions, Nickel, by then VP of Sales, asked him in a condescending manner, "Are you gonna be able to stay healthy?"

(FAC ¶¶ 68-72). Plaintiff's repeated objections and complaints make clear that this treatment was unwelcome. (FAC ¶¶ 36, 40, 50, 117-118). There Court need not make any inferences on whether the harassment was based on his disability. Defendant's management made comments that expressly implicate that the harassment was on the basis of his disability commenting on his memory and ability to stay healthy. (FAC ¶¶ 28-29, 32, 34, 41, 68-72, 74). These were not merely isolated comments as Defendant's own actions of not providing accommodations and refusing to grant Plaintiff similar opportunities like his peers culminated to create a hostile work environment. (FAC ¶¶ 31-33, 38, 41, 51, 55-57, 104-105, 114, 118-120). Ironically, it is Defendant whom makes a conclusory statement as to what all these statements mean, asserting and attempting to litigate factual allegations improper at this stage in proceedings. Thus, Plaintiff has pled throughout that he was subjected to harassment on the basis of his disability.

As to element three, Plaintiff pled throughout the FAC that the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment. Specifically, when Plaintiff requested accommodations, rather than engaging in the required interactive process, Defendant responded with a straight denial by not providing additional training during onboarding, refusing to permit Plaintiff the same opportunities as his peers, and following his return from medical leave initiated an impossible sales goal in order to have a pretextual reason to terminate his employment. (FAC ¶¶ 21-26, 32, 40-41, 48-51, 57-61, 69, 74-79, 84, 104-105, 114, 116-118). The frequency with which Plaintiff was forced to request accommodation and how often those requests denied with dismissal or insults, coupled with Defendant's failure to provide accommodation even when providing assurances of change, demonstrates that Plaintiff has sufficiently pled that the harassment was severe or pervasive enough to alter the conditions of employment. Notably, the terms and conditions were altered

because Plaintiff was not receiving the lucrative and more valuable leads. (FAC ¶¶ 28-30, 32, 36, 38, 41, 46, 50-51). Then, after returning from his medical leave, Plaintiff's employment was again altered by Defendant placing an unobtainable sales goal while also not allowing Plaintiff to receive new leads. (FAC ¶¶ 73-79). At this stage, this is sufficient, as Plaintiff need only show that the harassment was severe or pervasive, not both, and repeated interference with his right to an accommodation and more than merely isolated comments but sufficient acts taken in response to his disability satisfies this standard.

Finally, Plaintiff sufficiently pleads that there is employer liability meeting the pleading requirements for a hostile work environment claim. Employer liability can be shown when a hostile work environment is created by a supervisor. *Parkins v. Civil Constructors*, 163 F.3d 1027, 1032 (7th Cir. 1998). Throughout Plaintiff's FAC, Plaintiff pleads facts indicating that Plaintiff's supervisors were the cause of the hostile work environment through the various severe or pervasive conduct he subjected Plaintiff to including discriminatory comments related to Plaintiff's disability, repeatedly refusing to allow Plaintiff waterproofing leads, and implementing an unobtainable sales goal. (FAC ¶¶ 32-38, 40-41, 46-47, 50-51, 57, 73-79, 82). Therefore, Plaintiff has sufficiently pled all elements of a hostile work environment claim, preventing Defendant from being entitled to dismissal in its favor.

As such, Defendant is not entitled to dismissal because Plaintiff sufficiently alleged conduct to satisfy the elements of a hostile work environment disability-based harassment claim. Accordingly, this Court should deny Defendant's motion to dismiss Count II.

## CONCLUSION

Plaintiff respectfully requests this Court to deny Defendant's Partial Motion to Dismiss Plaintiff's First Amended Complaint, as Plaintiff has sufficiently plead claims for which relief

can be granted.

Dated this 6th day of October 2026.

**/s/ *Sophia K. Steere***
**SOPHIA K. STEERE, ESQ.**
**NATHAN C. VOLHEIM, ESQ.**
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331) 307 - 7634
Fax (630) 575 - 8188
ssteere@atlaslawcenter.com
nvolheim@atlaslawcenter.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of October 2026, a true and correct copy foregoing has been provided electronically via electronic mail and/or via U.S. mail.

**/s/ *Sophia K. Steere***
**SOPHIA K. STEERE, ESQ.**